IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 19-po-7008-SKC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**ALEXANDER KAGANAS**,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [ECF No. 30]**
_____

    The United States of America submits its response in opposition to the defendant's suppression motion.

    This Court should deny the defendant's Motion to Suppress Statements because the defendant was not in custody for purposes of *Miranda* at the time he made his initial statements to police. Moreover, even if this Court should find that the defendant's initial statements to law enforcement were made in violation of *Miranda*, this Court should still determine the defendant's post-*Miranda* statements are admissible, where the statements were voluntary and not the product of improper law enforcement tactics.

**BACKGROUND**

    On February 3, 2019, the defendant, a 40-year old medical doctor, and the 19-year old victim, A.L., were on a flight to Denver, Colorado. The defendant was intoxicated at the time, and shortly after the flight took off he moved into the empty seat immediately

1

adjacent to the victim. At this time, the defendant started telling the victim how "cute" she was and offered to buy her alcohol. These comments made the victim uncomfortable and she attempted to end the conversation. However, the defendant persisted, and he began to place his hands on the victim's legs, outer thigh, and arms. Passengers seated in the row behind the defendant and the victim observed what he was doing and informed flight personnel of his actions. As a result, the defendant was moved to a different seat on the aircraft. The Denver Police Department was informed of what occurred on the plane and upon arrival were waiting at the gate to speak to the defendant, the victim, and witnesses.

As the defendant exited the plane at approximately 8:30 p.m. on February 3, 2019, police asked him for his identification, and instructed him to follow a uniformed officer. The officer led the defendant to an open area in the terminal where police and the defendant engaged in an approximately 3 minute long conversation.[1] *See* Government's Exhibit 1A (INV_0041) at 6:14-8:00; *see also* Government's Exhibit 1B (INV_0023) at 8:00-10:00. During the short conversation, the defendant was asked about his seat, how much alcohol he consumed, and if there were any "issues" on the flight, before he admitted to the police that if he "did something wrong" it was because he was "drunk." *See* Government's Exhibit 1B (INV_0023) 9:20-9:34. At that point, the defendant was read his *Miranda* rights. Upon conclusion, the defendant asked the officer if he was under arrest, and the officer responded by telling the defendant "not yet." *See* Government's Exhibit 1B (INV_0023) 9:34-10:00. The defendant then acknowledged he understood his

---

[1] The time indicated in the upper right hand corner of the Government's Exhibits 1A, 1B, and 1C, is in Greenwich Mean Time (GMT). Mountain Standard Time (MST) is GMT -7 hours. Thus, in MST, the approximate start time of Government's Exhibits 1A, 1B, and 1C, is 8:35 p.m. on February 3, 2019. To be consistent with the defense, the Government will identify any relevant portions of the exhibits in the context of the total time of the individual video, instead of identifying specific times in GMT or MST.

rights and sporadic conversation between the defendant and police occurred for approximately 40 minutes, before the defendant was informed he was going to be taken to "detox." *See* Government's Exhibit 1B (INV_0023) at 9:34-18:42; *see also* Government's Exhibit 1C (INV_0026) at 39:00-46:25. During the entirety of their conversations, the defendant and police were both were respectful to one another and had no problems communicating. In addition, no charges were filed against the defendant at that time.

After being released from "detox", the defendant contacted police, and agreed to an interview at the Denver Airport on February 4, 2019.[2] At approximately 6:15 p.m. the defendant arrived to speak to an FBI agent. The agent told the defendant he was not under arrest and at that he was free to leave at any time. The defendant was also read his *Miranda* rights and gave written and verbal consent to questioning. *See* Government's Exhibit 1D (INV_0045) at 00:00-6:00. The interview lasted approximately 1 hour, and at the conclusion the defendant left without being charged.

On June 4, 2019, the defendant was charged by information for assaulting the victim, A.L., on an airplane. [ECF 1] Thereafter, on April 16, 2020, the defendant filed a Motion to Suppress Statements alleging that his statements to law enforcement were obtained in violation of *Miranda* and were not voluntary. [ECF 25]

For all the reasons stated below, this Court should deny the defendant's motion.

## ARGUMENT

### A. The defendant was not in custody prior to being read his *Miranda* rights at the airport

---

[2] The defendant's Motion to Suppress Statements only requests this Court exclude his statements from February 3, 2019. As such, the Government will not address the legality of the statements obtained on February 4, 2019.

Initially, the defendant contends that he was in custody immediately when he exited the plane for purposes of *Miranda,* citing the nature of his interactions with police. However, the facts the defendant uses to support his position are not enough to establish a custodial interrogation in light of the applicable authority, and as a result his argument fails.

### 1. Governing Law

The government "may not use statements . . . stemming from custodial interrogation of the defendant" unless the defendant has been provided with so-called *Miranda* warnings aimed at securing the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). It is clear that *Miranda* only applies when a defendant is subject to "custodial interrogation," meaning "'questioning initiated by law enforcement officers after a person has been taken into custody.'" *Illinois v. Perkins*, 496 U.S. 292, 296 (1990) (quoting *Miranda*, 384 U.S. at 444). "'[C]ustody is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). In determining whether an individual is in custody for *Miranda* purposes, the Supreme Court has identified a two-step inquiry. *Id.* at 508-09.

"[T]he initial step is to ascertain whether . . . a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave" by "examin[ing] all of the circumstances surrounding the interrogation," including "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id*. If a reasonable person would have felt free to terminate the

4

encounter and leave, then the person was not in custody and the inquiry is complete. *Id*. If a reasonable person would not feel free to leave, then courts must "ask the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 509.

That being said, "the Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." *Florida v. Bostick*, 501 U.S. 429, 431 (1991). This rule "applies equally" to police encounters that take place on trains, planes, buses and "city streets." *Id*. at 438, 439-40. The defendant bears the initial burden of proving that his confession was obtained while he was under custodial interrogation. However, once the defendant has met that burden, it is the Government's burden to show, by a preponderance of the evidence, that a confession was voluntary. *United States v. Davis*, 792 F.2d 1299 (5th Cir. 1986).

In applying these considerations, the Supreme Court's analysis in *Howes v. Fields* is instructive. Specifically in *Howes*, the Supreme Court was presented with the circumstances surrounding an interview of an inmate by 2 sheriff's deputies about criminal activity that occurred prior to his incarceration. *Howes v. Fields*, 565 U.S. 499, 502-03 (2012). To conduct the interview, the inmate was summoned from his cell to a conference room, where he was questioned for 5 to 7 hours, continuing long after the time when the inmate usually went to bed. *Id*. at 515-16. The deputies were also armed, and questioned the inmate using a "very sharp tone" that included "profanity." *Id*. at 515. The Court also found the inmate "said several times during the interview that he no longer wanted to talk

to the deputies" and at no time was he "given *Miranda* warnings or advised that he did not have to speak with the deputies." *Id.* at 503-04. Despite these facts, the Court still held that the inmate "was not in custody within the meaning of *Miranda*." *Id.* at 515-16. In doing so, the Court focused on how the inmate "was not physically restrained or threatened and was interviewed in a well-lit, average-sized conference room, where he was 'not uncomfortable,'" and that he "was told at the outset of the interrogation . . . that he could leave and go back to his cell whenever he wanted." *Id.* at 515. As a result, the Court determined that any facts that were indicative of a custodial interrogation "were offset by" other facts reflecting that the inmate "was not in custody within the meaning of *Miranda*." *Id.* at 515-17

### 2. Analysis

Similar to *Howes*, the defendant in the current case was not in custody prior to being read his *Miranda* rights. Specifically, during the initial interaction, police never brandished their weapons, nor did they physically restrain or threaten the defendant. Moreover, there is no evidence the defendant was uncomfortable with the police, as evidenced by his calm and respectful demeanor, and statements indicating he was willing to cooperate. *See* Government's Exhibit 1B (INV_0023) at 8:00-10:00. Furthermore, the defendant's interaction with police having occurred in a public place and having lasted less than an hour, are additional facts indicative of a non-custodial interrogation, and the absence of the coercive pressures similar to "the type of station house questioning at issue in *Miranda*." *Howes*, 565 U.S. at 508; *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (holding that the defendant was not in custody when he left the police station "[a]t the close of a 1/2-hour interview"); *see also Berkemer v. McCarty*, 468 U.S. 420, 438 (1984)

(where the Supreme Court recognized that the public nature of an interaction with police eases the coercive impact).

Thus, where the defendant was not in custody prior to being read his *Miranda* rights, his statements are admissible, and defendant's motion should be denied.

**B. The defendant's post-*Miranda* statements should be admitted where they were voluntarily and were not the product of improper law enforcement tactics**

Even if this Court were to conclude the defendant was in custody prior to being read his *Miranda* rights, the defendant's post-*Miranda* statements to law enforcement are nonetheless admissible, as the statements were voluntary and not the product of law enforcement techniques to undermine *Miranda* protections.

### *1. Governing Law*

In *Oregon v. Elstad*, 470 U.S. 298 (1985), the Supreme Court first addressed whether a statement obtained in violation of *Miranda* taints a later statement made after a full advisement and waiver of *Miranda* rights. The Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Elstad*, 470 U.S. at 318. The Court explained that "there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary." *Id.* at 318. In determining voluntariness, courts use the totality of circumstances test. *United States v. Pettigrew*, 468 F.3d 626, 637 (10th Cir. 2006). "The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne."

7

*United States v. Rith*, 164 F.3d 1323, 1333 (10th Cir. 1999). "Courts typically consider five factors in a voluntariness inquiry: '(1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment.'" *United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997).

In *Missouri v. Seibert*, 542 U.S. 600 (2004), the Supreme Court revisited how to treat a statement that follows a violation of *Miranda.* The plurality of the Court held that a post-*Miranda* statement was not admissible where "interrogators employ[ed] the technique of withholding warnings until after the interrogation succeed[ed] in eliciting a confession," noting that under this technique, the "warnings [were] ineffective in preparing the suspect for successive interrogation, close in time and similar in content." *Seibert*, 542 U.S. at 612-13. The plurality then identified five factors that are relevant to inquiry of whether a statement is admissible in this context: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615. Justice Kennedy concurred only in the judgment, finding that he "would apply a narrower test applicable only in the infrequent case... in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Id.* at 622. Because of the nature of the holding of *Seibert*, courts have used both standards in analyzing this issue. *See United States v. Carrizale-Toledo*, 454 F.3d 1142, 1151 (10th Cir. 2006) (in which the court applied both the *Seibert* plurality

8

and Justice Kennedy concurrence in analyzing whether a post-*Miranda* statement was admissible).

### 2. Analysis

#### a. The defendant's statement and Miranda wavier were voluntary

Using the factors indicated *supra*, it is clear the defendant's initial statements and *Miranda* waiver were voluntarily. Specifically, the defendant is a 40-year old, highly educated medical doctor. Prior to being informed he was being taken to "detox," the defendant was never physically restrained or harmed, and the conversations that occurred between him and police were coherent and respectful. *See* Government's Exhibit 1B (INV_0023). When the defendant was advised of his *Miranda* rights, he indicated he understood those rights before asking the officer questions about the allegations against him. *See* Government's Exhibit 1B (INV_0023) at 8:00-11:40. Moreover, the defendant waived his *Miranda* rights and consented to questioning for a second time on the following day with an agent from the FBI, before submitting to a another interview. *See* Government's Exhibit 1D (INV_0045) at 00:00-6:00; *see also Oregon v. Elstad*, 470 U.S. 298, 318 (1985) ("The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative"). Therefore, these facts taken together, indicate the defendant's initial statements and the coinciding *Miranda* waiver were voluntary.

#### b. The defendant's statement was not a result of law enforcement tactics to undermine Miranda protections

Regardless of whether the *Seibert* plurality opinion or the Justice Kennedy concurrence apply, the facts in the current case do not support the conclusion that police

engaged in tactics to undermine the defendant's *Miranda* rights. In accordance with the plurality opinion, law enforcement's initial questioning of the defendant was sporadic, lacked detail and also continuity, as evidenced by the long periods of silence that occurred during the questioning, and by law enforcement's acceptance of the defendant's statements without pressing him for more details. In addition, after the defendant was read his *Miranda* warnings, the officer did not immediately follow up with any questions, and minutes later it the defendant who first initiated conversation about the "issue" on the airplane. *See* Government's Exhibit 1B (INV_0023) at 8:00-11:40. Thereafter, the conversations continued in the same sporadic and unplanned manner. *See* Government's Exhibit 1B (INV_0023). While these facts support an absence of improper police tactics under the plurality opinion, the sporadic and somewhat disorganized nature of law enforcement's questioning of the defendant, in and of itself, is sufficient evidence to show there was no "deliberate two-step interrogation" process contemplated in the Justice Kennedy concurrence. *Seibert*, 542 U.S. at 622.

Despite this, the defendant argues that his admissions were not voluntary, claiming he was "threatened" when he asked an officer if he was under arrest, and the officer responded by saying "not yet." However, this argument is without merit, where the officer's ordinary tone and demeanor cannot reasonably be construed as hostile, let alone rising to the level of psychological coercion, to the point that the defendant's will was overborne. *See, e.g.*, *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993) (holding that law enforcement's threats to the defendant rendered his statements involuntary, where they told the defendant they would arrest his family members, without probable cause, unless he cooperated).

10

Therefore, where the defendant's post-*Miranda* statements were made voluntarily and were not the product of improper police tactics, this Court should deem them admissible.

## Conclusion

For all the above-stated reasons, this Court should deny the defendant's motion and find he was not in custody at the time of the initial questioning by police, or in the alternative, find that the defendant's post-*Miranda* statements on February 3, 2019 are admissible.

Dated: 03/25/2020

        Respectfully submitted,

        JASON R. DUNN
        United States Attorney

By:   /s/ *Thomas Minser*
       THOMAS MINSER
       Assistant United States Attorney
       1801 California St., Suite 1600
       Denver, Colorado 80202
       Phone: (303) 454-0203
       Fax: (303) 454-0405
       E-mail: Thomas.Minser@usdoj.gov
       Attorney for the United States

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 25th day of March 2020, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE [ECF No. 30]** with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following individuals:

    **Marci G. LaBranche**
    Email: labranche@sslhlaw.com
    **Shanelle Kindel**
    Email: kindel@ridleylaw.com

                                                   /s/ *Thomas Minser*
                                                   THOMAS MINSER
                                                   Assistant United States Attorney
                                                   1801 California St., Suite 1600
                                                   Denver, Colorado 80202
                                                   Phone:  (303) 454-0203
                                                   Fax:  (303) 454-0405
                                                   E-mail: Thomas.Minser@usdoj.gov
                                                   Attorney for the United States